# In the United States Court of Federal Claims

No. 21-894C
(Filed: June 11, 2021)

```
*************************************
PAUL PATTERSON,                       *
                                      *
              Plaintiff,              *
                                      *    RCFC 12(b)(1); Motion to Dismiss;
v.                                    *    Jurisdiction; Statute of Limitations;
                                      *    Military Disability Retirement Pay Claim
THE UNITED STATES,                    *
                                      *
              Defendant.              *
*************************************
```

Sean Timmons, Houston, TX, for plaintiff.

Catharine Parnell, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

     Plaintiff Paul Patterson seeks damages arising from his discharge from the United States Army ("Army"), upheld by the United States Army Board for Correction of Military Records ("ABCMR"). Defendant moves to dismiss plaintiff's claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the court determines that it lacks subject matter jurisdiction to entertain plaintiff's claim and grants defendant's motion to dismiss.

### I. BACKGROUND

     Plaintiff enlisted in the Army in August 1993. Compl. ¶ 9. His work as an armament missile repair technician required "substantial upper body strength and the ability to bend down repeatedly during the course of a work day." Id. ¶ 10. Plaintiff suffered a series of injuries in the line of duty, none of which was due to misconduct or negligence, beginning in 1998. Id. ¶¶ 11, 13-14, 16. In November 1998, plaintiff injured his left knee while engaging in physical training. Id. ¶ 11. He underwent surgery approximately six months later for a torn anterior cruciate ligament ("ACL") in his left knee. Id. ¶ 12. In June 1999, plaintiff injured his back in the course of his military duties. Id. ¶ 13. In October 1999, he injured his shoulder while performing strength conditioning, id. ¶ 14, and he injured his right wrist during physical training later that same month, id. ¶ 16.

Because of these injuries, plaintiff underwent a number of evaluations to assess his ability to continue serving in the Army. After being evaluated for "chronic back pain," a left pectoral muscle tear, and ACL reconstruction, plaintiff was placed on a permanent physical profile in October 1999.[1] Id. ¶ 15. Plaintiff was then recommended for a medical evaluation board ("MEB") in September 2000. Id. ¶ 22. Via a memorandum to the appropriate medical officer, plaintiff asked that records related to his back injury be transmitted to the MEB for evaluation. Id. ¶ 32. He notified the medical officer that he was suffering from muscle spasms in his mid and lower back, for which he had been proscribed Valium and placed on five days of restriction. Id. He was informed later the same month that his back injury and the resulting muscle spasms were not a "boardable [sic] condition" and that the "reason[] for his MEB is knee pain." Id. ¶ 33 (first alteration in original).

In October 2000, plaintiff underwent a physical evaluation board ("PEB") that considered his left knee instability, status post ACL reconstruction; scaphoid nonunion of the right hand; and left pectoralis major tear.[2] Id. ¶ 23. The PEB determined that plaintiff's left knee injury was an unfitting medical condition and assigned him a twenty percent disability rating. Id. ¶ 24. Furthermore, the PEB concluded that plaintiff's scaphoid nonunion and pectoralis major tear were not unfitting medical conditions and did not merit disability ratings. Id. ¶ 25. Plaintiff was discharged from the Army on February 1, 2001. Id. ¶ 7. He subsequently filed a claim for service-connected compensation and in June 2002, the Department of Veterans Affairs assigned him the following disability percentages: status post left pectoralis major tear (twenty percent); left knee ACL injury, status post arthroscopic surgery with reconstruction (ten percent); right scaphoid nonunion, status post surgical repair (ten percent); and degenerative joint disease, left ankle (ten percent). Id. ¶ 34.

Over sixteen years after his discharge, in May 2017, plaintiff submitted a petition to the ABCMR. Id. ¶ 35. He requested that the ABCMR change his discharge classification from disability with severance pay to permanent disability retirement or, alternatively, that he be referred to an MEB. Id. After receiving an advisory opinion from the Army Review Boards Medical Advisor, the ABCMR ultimately denied plaintiff's petition on October 27, 2020. Id. ¶¶ 37-38, 41. Plaintiff indicates that the ABCMR denied his petition because it "found insufficient evidence to show that the applicant had additional conditions that failed to meet medical retention standards" and that "denial of additional conditions shown on the applicant's MEB/PEB was not in error or unjust." Id. ¶ 41.

Plaintiff filed a complaint in this court on February 8, 2021. Plaintiff alleges that the ABCMR "committed a substantial error when it failed to find that [his] injuries associated with his left pectoral tear, non-union scaphoid, and back spasms were unfitting medical conditions which required a disability percentage rating." Id. ¶ 55. On March 24, 2021, defendant filed the instant motion to dismiss. Defendant asserts that because plaintiff filed his complaint more than

---

[1] As a result of the permanent physical profile, plaintiff was prohibited from engaging in activities such as wearing a helmet, carrying a rifle, or lifting over fifteen pounds. Compl. ¶ 15.

[2] A PEB "determines a service member's fitness for duty and entitlement to disability retirement once [an MEB] finds the soldier does not meet the [service's] standards for retention under its regulations." Chambers v. United States, 417 F.3d 1218, 1225 n.2 (Fed. Cir. 2005).

six years after his discharge from the Army in 2001, his claim is time barred. Def.'s Mot. 4-7. Moreover, defendant maintains that this court lacks jurisdiction because the complaint (1) relies on the Administrative Procedures Act, which is not a money-mandating statute, to establish jurisdiction, and (2) identifies the ABCMR, not the United States itself, as the defendant. Id. at 7-8. This motion is fully briefed and, because the court deems oral argument unnecessary, is now ripe for adjudication.

## II. STANDARDS FOR DECISION

### A. Subject-Matter Jurisdiction

In determining whether subject-matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Faced with a motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. Id. If jurisdictional facts are challenged, the court is not limited to the pleadings in determining whether it possesses subject-matter jurisdiction to entertain a plaintiff's claims. Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014); Pucciariello v. United States, 116 Fed. Cl. 390, 400 (2014). If the court finds that it lacks subject-matter jurisdiction, RCFC 12(h)(3) requires the court to dismiss the claim.

Whether the court has subject matter jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### B. Statute of Limitations

The Court of Federal Claims may exercise jurisdiction only over claims against the United States that are "filed within six years after such claim first accrues." 28 U.S.C § 2501. A claim has accrued "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009). The question of "whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995); accord FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012). The United States Supreme Court has "long interpreted" this limitations statute as "absolute" or "jurisdictional." John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008). Consequently, it is not subject to equitable tolling. Id. at 133-34; see also Young v. United States, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("[Equitable tolling] is foreclosed by John R. Sand & Gravel, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations." (quoting John R. Sand & Gravel, 552 U.S. at 133-34)).

### III. DISCUSSION

In urging the court to dismiss plaintiff's claim, defendant primarily invokes the statute of limitations. Defendant asserts that the PEB's decision, which led to plaintiff's discharge in 2001, signaled the accrual of plaintiff's claim and triggered the statute of limitations. Def.'s Mot. 4-5. Plaintiff nevertheless maintains that defendant's argument "does not negate the fact that [the ABCMR] failed to comply with its own mandates when adjudicating Plaintiff's petition for correction of his military records." Pl.'s Resp. 2. Additionally, plaintiff contends that his back injury, which allegedly rendered him unfit for service, was considered for the first time by the ABCMR. Id. at 7. Thus, plaintiff posits that the PEB should not be considered for the purpose of claim accrual as it pertains to this injury. Id.

### A. The Statute of Limitations Bars Consideration of Plaintiff's Injuries Explicitly Reviewed by the PEB

The court agrees with defendant that plaintiff's PEB and subsequent discharge in 2001 triggered the statute of limitations, barring the court from considering his claim now. "A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)). Applying this rule in the context of military disability retirement pay, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") stated:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. The decision by the first statutorily authorized board

> which hears or refuses to hear the claim is the triggering event.  If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge.  A subsequent petition to the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board.

Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing Friedman v. United States, 310 F.2d 381, 390, 396-98 (Ct. Cl. 1962)); accord Chambers, 417 F.3d at 1221, 1224-25, 1227; Martinez, 333 F.3d at 1311-15.  A PEB like the one plaintiff underwent in 2000 is a statutorily authorized board and, consequently, a disability retirement claim accrues when it issues its decision and the statute of limitations begins to run upon the service member's discharge. Sabree v. United States, 90 Fed. Cl. 683, 695 (2009) ("[W]hen a service member receives a PEB prior to discharge, the accrual of the statute of limitations starts upon the service member's discharge from service . . . ."); accord Real, 906 F.2d at 1560; Fuller v. United States, 14 Cl. Ct. 542, 544 (1988).  Subsequent review by the ABCMR or equivalent corrections board is permissive rather than mandatory.  Hurick v. Lehman, 782 F.2d 984, 987 (Fed. Cir. 1986).  Thus, ABCMR review does not "create a new substantive cause of action which has its own, new, limitations period."  Friedman, 310 F.2d at 397.

Plaintiff's PEB, and his discharge in February 2001, triggered the statute of limitations.  The fact that plaintiff sought review from the ABCMR in the interim does nothing to toll the statute of limitations or suspend the accrual of his claim.  A service member who seeks ABCMR review but also wishes to preserve a judicial remedy is expected to "file suit within six years of the date of discharge and request that the court action be stayed until after the [ABCMR] proceeding is completed."  Martinez, 333 F.3d at 1309; accord Richey v. United States, 322 F.3d 1317, 1320 (Fed. Cir. 2003).  Because the PEB is a statutorily authorized board, and because nearly twenty years elapsed between plaintiff's discharge and the filing of his complaint, the statute of limitations precludes the court from considering plaintiff's claim.

### B. The Statute of Limitations Bars Consideration of Plaintiff's Back Injury

In his response to defendant's motion to dismiss, plaintiff treats his back injury as distinct from his other injuries.[3]  Plaintiff asserts that after the MEB refused to consider this injury, the injury was not considered by the PEB or any reviewing body, nor did the PEB or any reviewing body "receive a request to consider Plaintiff's back condition and deny said request."  Pl.'s Resp. 7.  Plaintiff thus asserts that because the ABCMR was the first statutorily authorized board to consider or refuse to consider his back injury, the statute of limitations did not begin to run until the ABCMR issued its decision in 2020.

Plaintiff is correct that when the ABCMR is the first statutorily authorized board to review a service member's claim for disability benefits, denial by the ABCMR triggers the

---

[3] Defendant's assertion that plaintiff submitted a request regarding his back injury to the PEB, rather than the MEB, see Def.'s Reply 4, appears to be incorrect.

statute of limitations.  See Chambers, 417 F.3d at 1226.  But the Federal Circuit has acknowledged that in some circumstances, a service member's failure to properly pursue PEB review prior to discharge may "have the same effect as a refusal by the service to provide [PEB] review."  Real, 906 F.2d at 1560.  To determine whether plaintiff waived his right to board review, the court evaluates his knowledge of the existence of his back injury, as well as his knowledge of the extent of that injury.  Id. at 1562.  The court assesses this knowledge according to the criteria laid out in 10 U.S.C. § 1201, which governs eligibility for disability benefits.  Id.  Under that statute, plaintiff's entitlement to disability retirement would require a determination that "based on accepted medical principles, the disability is of a permanent nature and stable."  10 U.S.C. § 1201(b)(1) (2000).

      Plaintiff had actual or constructive knowledge at the time of his discharge that any disability related to his back injury would be of a permanent nature.  In evaluating plaintiff's knowledge, the court considers both what he alleges in his complaint and what he does not.  Plaintiff alleges that he was placed on a permanent physical profile in 1999 after being evaluated for chronic back pain.  He alleges that he specifically requested that the MEB evaluate his back injury in September 2000, after it had become apparent that he "could not perform the duties of . . . [an] Armament Missile Repair[] Technician."  Compl. ¶ 22.  Plaintiff does not, however, allege that the full extent of his back injury was unclear at the time of his discharge.[4]  He also does not allege that he has discovered any new medical information in the following twenty years that might cast his injury in a different light.  Instead, he relies solely on medical information available at the time of his discharge to allege that this back injury was an "unfitting condition[] that prevented Plaintiff from reasonably performing the duties of his office, rank, grade, or rating," id. ¶ 47, and that both the MEB and ABCMR erred by refusing to evaluate it, id. ¶ 40.  And, significantly, plaintiff's knowledge extended beyond the injury itself.  Plaintiff indicates that his request that the MEB consider his back injury was explicitly denied.  Id. ¶ 33.  Thus, he was both fully aware of his injury and fully aware of "the Army's adverse position concerning any claim that he might have for disability retirement pay" with respect to that injury.  Miller v. United States, 175 Ct. Cl. 871, 879 (1966).

      Ultimately, the Federal Circuit's approach to the statute of limitations in cases like Friedman, Real, and Chambers aligns squarely with fundamental principles of claim accrual.  "It is a plaintiff's knowledge of the facts of the claim that determines the accrual date," and accrual may be suspended only if plaintiff's injury was still "inherently unknowable" at that time.[5]

---

    [4]  Plaintiff alleges that when he submitted a reply to the ABCMR's advisory opinion in January 2020, he "explicitly raise[d] the issue of the MEB's failure to provide an adequate rationale for refusing to evaluate Plaintiff's lower back condition[] as well as the failure of the advisory opinion to adequately explain its rationale for why Plaintiff's recurrent back issues were not a 'boardable [sic] condition.'"  Compl. ¶ 40 (alteration in original).  Tellingly, he does not indicate that he raised any other objections to the ABCMR's evaluation of his back injuries at that time.

    [5]  Accrual suspension also applies when "defendant has concealed its acts with the result that plaintiff was unaware of their existence."  Martinez, 333 F.3d at 1319 (quoting Welcker v.

Young v. United States, 529 F.3d 1380, 1384-85 (Fed. Cir. 2008); accord Ingrum, 560 F.3d at 1314-15; Martinez, 333 F.3d at 1319; Catawba Indian Tribe v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993).  In much the same way, in the context of military disability retirement pay, a plaintiff's "awareness of the disability coupled with awareness of the review board process causes the disability claim to accrue at that time." Purvis v. United States, 77 F. App'x 512, 514 (Fed. Cir. 2003) (citing Friedman, 310 F.2d at 402).  It is precisely this type of awareness that plaintiff demonstrates throughout his complaint.  Because plaintiff understood the full extent of his back injury, and because he understood the effect of the PEB proceedings, the court will not apply the statute of limitations differently to plaintiff's back injury than it did to the rest of his injuries.

## IV.  CONCLUSION

Because the court finds that the statute of limitations decidedly bars plaintiff's claim, it does not reach defendant's other jurisdictional arguments.  Accordingly, the court **GRANTS** defendant's motion to dismiss.  Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.  No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985)); accord Ingrum, 560 F.3d at 1315.  Plaintiff does not allege that such concealment occurred here.